LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JORGE GUAMAN, JOSE ORTEGA SANCHEZ,
and CARLOS PALAGUACHI, *on behalf of themselves*,
*FLSA Collective Plaintiffs, and the Class,*

               Plaintiffs,

       v.

SOFIA FABULOUS PIZZA CORP., SOFIA 61ST ST.
CORP., SERAFINA BROADWAY LTD., SERAFINA 77
WEST LLC, REGENCY RESTAURANT LLC,
SERAFINA MEATPACKING LTD., SOFIA 58TH ST.
CORP., 1260 RESTAURANT CORP., SERAFINA
WHITE PLAINS LLC, BRASSERIE COGNAC DU
MONSIEUR BALLOON CORP., SERAFINA EAST
HAMPTON CORP., VITTORIO ASSAF a/k/a VICTOR
ASSAF, and PASQUALE GRANATO a/k/a FABIO
GRANATO,

               Defendants.

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

---

     Plaintiffs    JORGE  GUAMAN,  JOSE  ORTEGA  SANCHEZ  and  CARLOS

PALAGUACHI ("Plaintiffs"), on behalf of themselves and others similarly situated, by and

through their undersigned attorneys, hereby file this Class and Collective Action Complaint

against Defendants, SOFIA FABULOUS PIZZA CORP., SOFIA 61ST ST. CORP., SERAFINA BROADWAY LTD., SERAFINA 77 WEST LLC, REGENCY RESTAURANT LLC, SERAFINA MEATPACKING LTD., SOFIA 58TH ST. CORP., 1260 RESTAURANT CORP., SERAFINA WHITE PLAINS LLC, BRASSERIE COGNAC DU MONSIEUR BALLOON CORP., SERAFINA EAST HAMPTON CORP. (together the "Corporate Defendants"), PASQUALE GRANATO a/k/a FABIO GRANATO and VITTORIO ASSAF a/k/a VICTOR ASSAF (together, the "Individual Defendants," and together with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.     Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants:  (1) unpaid overtime, (2) unpaid wages due to time-shaving, (3) liquidated damages and (4) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to time-shaving, (3) unpaid spread of hours premium, (4) statutory penalties, (5) liquidated damages and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.    Plaintiff, JORGE GUAMAN, is a resident of Queens County, New York.

6.    Plaintiff, JOSE ORTEGA SANCHEZ, is a resident of Bronx County, New York.

7.    Plaintiff, CARLOS PALAGUACHI, is a resident of Queens County, New York.

8.    Together, Defendants operate an Italian restaurant chain under the trade name "Serafina," including eleven (11) restaurant locations in New York State:

   a.   1022 Madison Ave., New York, NY 10021 ("Serafina Madison Ave.");

   b.   33 E. 61st St., New York, NY 10021 ("Serafina 61st St.");

   c.   218 W. 55th St., New York, NY 10019 ("Serafina Broadway");

   d.   2178 Broadway, New York, NY 10024 ("Serafina Upper West");

   e.   224 W. 49th St., New York, NY 10019 ("Serafina Time Hotel");

   f.   7 Ninth Ave., New York, NY 10011 ("Serafina Meatpacking");

   g.   38 E. 58th St., New York, NY 10022 ("Serafina 58th St.");

   h.   1260 Amsterdam Ave., New York, NY 10027 ("Serafina Harlem");

   i.   199 Main St., White Plains, NY 10601 ("Serafina White Plains");

   j.   1740 Broadway, New York, NY 10019 ("Serafina Brasserie Cognac");

   k.   104 East Main St., East Hampton, NY 11937 ("Serafina East Hampton")

9.    Corporate Defendants:

   a.   SOFIA FABULOUS PIZZA CORP. is a business corporation organized under the laws of the State of New York. SOFIA FABULOUS PIZZA CORP. controls Serafina Madison Ave. Its principal place of business is located at 1022 Madison Avenue, New York, NY 10021. Its address for service of process is c/o Zvi Zer, Esq. 319 5th Ave., 3rd Floor, New York, NY 10016;

b.  SOFIA 61ST ST. CORP. is a business corporation organized under the laws of the State of New York. SOFIA 61ST ST. CORP. controls Serafina 61st St. Its principal place of business is located at 33 E. 61st St., New York, NY 10021. Its address for service of process is c/o Pasquale Granato, 19 Christopher St., 1C, New York, NY 10014;

c.  SERAFINA BROADWAY LTD. is a business corporation organized under the laws of the State of New York. SERAFINA BROADWAY LTD. controls Serafina Broadway. Its principal place of business is located at 218 W. 55th St., New York, NY 10019. Its address for service of process is c/o Robert N. Swetnick, 2217 Broadway, Suite 304, New York, NY 10007;

d.  SERAFINA 77 WEST LLC is a limited liability company organized under the laws of the State of New York. SERAFINA 77 WEST LLC controls Serafina Upper West. Its principal place of business is located at 2178 Broadway, New York, NY 10024. Its address for service of process is c/o Mark D. Mermel Esq., 2001 Marcus Ave., Suite W180, Lake Success, NY 11042;

e.  REGENCY RESTAURANT LLC is a limited liability company organized under the laws of the State of New York. REGENCY RESTAURANT LLC controls Serafina Time Hotel. Its principal place of business is located at 224 W. 49th St., New York, NY 10019. Its address for service of process is c/o Szegda & Gerbin, 300 E. 42nd St., New York, NY 10017;

f.  SERAFINA MEATPACKING LTD. is a limited liability company organized under the laws of the State of New York. SERAFINA MEATPACKING LTD. controls Serafina Meatpacking. Its principal place of business is located at 7 Ninth

Ave., New York, NY 10011. Its address for service of process is c/o Eaton & Van Winkle, ATTN Robert Swetnick, 3 Park Ave., 16th Floor, New York, NY 10016;

g.  SOFIA 58TH ST. CORP. is a business corporation organized under the laws of the State of New York. SOFIA 58TH ST. CORP. controls Serafina 58th St. Its principal place of business is located at 38 E. 58th St., New York, NY 10022. Its address for service of process is c/o Kenneth Magida, 10 Cuttermill Road, Great Neck, NY 11021;

h.  1260 RESTAURANT CORP. is a business corporation organized under the laws of State of New York. 1260 RESTAURANT CORP. controls Serafina Harlem. Its principal place of business is located at 1260 Amsterdam Ave., New York, NY 10027. Its address for service of process is c/o Eaton & Van Winkle, ATTN Robert Swetnick, 3 Park Ave., 16th Floor, New York, NY 10016; and

i.  SERAFINA WHITE PLAINS LLC is a limited liability company organized under the laws of the State of New York. SERAFINA WHITE PLAINS LLC controls Serafina White Plains. Its principal place of business is located at 100 Main St., White Plains, NY 10601. Its address for service of process is c/o Louis R. Capelli, 115 Stevens Ave., Valhalla, NY 10595.

j.  BRASSERIE COGNAC DU MONSIEUR BALLOON CORP. is a business corporation organized under the laws of the State of New York. BRASSERIE COGNAC DU MONSIEUR BALLOON CORP. controls Serafina Brasserie Cognac. Its principal place of business is located at 1740 Broadway, New York, NY 10019. Its address for service of process is c/o Robert N. Swetnick, 217 Broadway, Suite 304, New York, NY 10007.

k. SERAFINA EAST HAMPTON CORP. is a business corporation organized under the laws of State of New York. SERAFINA EAST HAMPTON CORP. controls Serafina East Hampton. Its principal place of business is located at 104 N. Main St., East Hampton, NY 11937. Its address for service of process is c/o Eaton & Van Winkle, ATTN Robert Swetnick, 3 Park Ave., 16th Floor, New York, NY 10016; and

10. Individual Defendants:

a. PASQUALE GRANATO is the Chief Executive Officer of SOFIA 61ST ST. CORP. and SOFIA 58TH ST. CORP. He is also an executive officer, member and/or principal of all other Corporate Defendants;

b. VITTORIO ASSAF is an executive officer, member, and/or principal of all Corporate Defendants.

11. Both Individual Defendants make operational decisions (including payroll and wage and hour policies) concerning all Serafina Restaurants jointly. Both Individual Defendants frequent each of the Serafina Restaurants and will direct and supervise employees while they are there. They hire all the managers of each Serafina Restaurant and have ultimate authority over staffing, payroll and all wage and hour policies at the Serafina Restaurants. For example, when either of the Individual Defendants observe that an employee at any Serafina Restaurant is performing any task incorrectly, they will rebuke them and correct any inadequacy in the service provided by staff to customers.

12. Further, Individual Defendants exercised direct control over the Plaintiffs, FLSA Collective Plaintiffs and Class members. They exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise

affect the quality of employment of Plaintiffs, the FLSA Collective Plaintiffs and the Class members. They also exercised the power and authority to hire, fire, supervise, and control supervisors of Plaintiffs, the FLSA Collective Plaintiffs and the Class members.

13.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

14.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business enterprise operated by Defendants.

15.     Defendants operate the Serafina restaurants as a single integrated enterprise, under the control of Individual Defendants. The Serafina restaurants are engaged in related activities, share common ownership and have a common business purpose. Specific facts supporting the assertion that Defendants operate as a single integrated enterprise include:

> (a)     Corporate Defendants share a common purpose of operating Italian restaurants in New York State.

> (b)     Defendants' restaurants all conduct business under the trade name "Serafina", and are each marketed to the public under that trade name.

> (c)     Defendants' Serafina restaurants are commonly managed by Individual Defendants.

> (d)     The Serafina restaurants share common ownership, management and corporate executive leadership.

> (e)     The Serafina restaurants share a website at serafinarestaurant.com. All Serafina restaurant locations are advertised to the public on such website.

(f)  Employees, food, and supplies were freely interchangeable among the eleven Serafina restaurant locations.

(g)  Defendants' Serafina Restaurants maintain centralized labor relations and human resources, and a single payroll system for employees at all facilities. All Serafina Restaurants operate under the same wage and hour policies as established by the Individual Defendants.

(h)  Each of the Serafina Restaurants share a common look and feel, use the same logos, and food items served are similar.

(i)  Employees at each of the Serafina Restaurants are all provided the same "Staff Handbook."

16.    Plaintiffs retained Lee Litigation Group, PLLC in this litigation, and have agreed to pay them a reasonable fee for their services.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt kitchen employees (including, but not limited to: cooks, non-executive chefs, sous-chefs, porters and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

18.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper  (i) overtime premium at the rate of one and one half times the regular rate for

work in excess of forty (40) hours per workweek and (ii) compensation for all hours worked due to a policy of time-shaving. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

19.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt kitchen employees (including, but not limited to: cooks, non-executive chefs, sous-chefs, porters and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.    The proposed Class is so numerous such that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

23.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

        a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

d)  Whether Defendants properly notified Plaintiffs and Hourly Wage Subclass of their hourly rate and overtime rate;

e)  Whether Defendants provided to Plaintiffs and Class members proper wage and hour notices, at date of hiring and upon changes in the information in the notice thereafter, per requirements of the New York Labor Law;

f)  Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law;

g)  Whether Defendants improperly paid Plaintiffs and Class Members on a fixed salary basis, when New York State law requires that all non-exempt employees be paid on an hourly basis

h)  Whether Defendants properly compensated Plaintiffs and Class Members for overtime under the NYLL;

i)  Whether Defendants paid Plaintiffs and Class Members for less than the actual number of hours that worked each workweek, pursuant to a policy of time-shaving; and

j)  Whether Defendants paid the "spread of hours" premium owed to employees working more than ten hours per day as required by New York Labor Law.

## STATEMENT OF FACTS

### *Plaintiff JORGE GUAMAN*

28.     In or around April 2015, Plaintiff JORGE GUAMAN was hired by Defendants to work as a sous chef for Defendants' restaurant, Serafina 61st Street, located at 33 E. 61st St., New York, NY 10021. On or about September 2015, Plaintiff GUAMAN, was transferred to Defendants' restaurant, Serafina Harlem located at 1260 Amsterdam Ave., New York, NY 10027, where he worked as a chef. Plaintiff GUAMAN's employment was terminated on January 1, 2016.

29.     Plaintiff GUAMAN worked the following regular hours during his employment:

   a.   From April 2015 to July 2015: 8:00 a.m. to 7:00 p.m., six (6) days a week, for a total of sixty-six (66) hours per week.

   b.   From July 2015 to September 2015: 3:00 p.m. to 11:00 p.m. seven (7) days a week, for a total of fifty-six (56) hours per week.

   c.   From September 2015 to December 2015: 9:00 a.m. to 11:00 p.m. seven (7) days a week, for a total of eighty-four (84) hours per week.

   d.   From December 2015 to January 1, 2016: 10:00 a.m. to 9:00 p.m. six (6) days a week, for a total of sixty-six (66) hours per week.

30.      From April 2015 until December 2015, Plaintiff GUAMAN was compensated at a fixed  salary of $1,100.00 per week. Starting in December 2015, until the end of his employment by Defendants on or about January 1, 2016, Plaintiff GUAMAN's fixed salary was raised to $1.250.00 per week. All non-executive chefs were paid on a fixed salary basis even though they were improperly classified as exempt.

31.     Throughout Plaintiff GUAMAN's employment, he was paid a fixed weekly salary, regardless of how many hours he worked each workweek. However, there was never any

agreement that Plaintiff GUAMAN's fixed weekly salary was intended to cover the overtime hours in excess of forty (40) that he worked. Other non-executive chefs were similarly paid on an fixed salary basis and were not compensated for their overtime premium of time and a half for all hours worked over forty (40), even though there was never any agreement that their fixed salaries would cover overtime.

32.     While employed by Defendants. Plaintiff GUAMAN never received any spread of hours premium payments, even though he regularly worked shifts exceeding ten (10) hours in duration. Similarly, Class Members never received any spread of hours premium, even though they regularly worked shifts exceeding ten (10) hours in duration.

33.     While employed by Defendants, Plaintiff GUAMAN never received a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

34.     Throughout his employment by Defendants, Plaintiff GUAMAN never received any proper wage statements. The wage statements that Plaintiff GUAMAN received from Defendants did not accurately state Plaintiff GUAMAN's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff JOSE ORTEGA SANCHEZ*

35.     In or around April 2015, Plaintiff JOSE ORTEGA SANCHEZ, was hired by Defendants to work as a cook at Defendants' restaurant, Serafina Brasserie Cognac, located at 1740 Broadway, New York, NY 10019. On or about May 2015, Plaintiff SANCHEZ was transferred to Defendants' restaurant, Serafina Harlem, located at 1260 Amsterdam Ave., New York, NY 10027, to work as a chef. Plaintiff SANCHEZ's employment was terminated on September 1, 2015.

36.    From April 2015 until May 2015:

    a.  From April 2015 until May 2015, Plaintiff SANCHEZ worked as a cook at Serafina Brasserie Cognac for approximately twelve (12) hours per day, five (5) days per week, for a total of sixty (60) hours per week.

    b.  From April 2015 until May 2015, Plaintiff SANCHEZ was compensated at a straight time base hourly rate of $14.00 per hour for all hours worked, in check form and an overtime rate of $21.00. All non-chef level employees were paid at an hourly rate.

    c.  From April 2015 until May 2015, due to Defendants' policy of time shaving, Plaintiff SANCHEZ was compensated for working only for forty-eight (48) hours each workweek, even though he actually worked approximately sixty (60) hours each week throughout this period. Similarly, FLSA Collective Plaintiffs and Class Members all received compensation for fewer overtime hours than they actually worked each workweek, due to time shaving.

    d.  From April 2015 until May 2015. Plaintiff SANCHEZ never received any spread of hours premium payments, even though he regularly worked shifts exceeding ten (10) hours during this period. Similarly, Class Members never received any spread of hours premium payments, even though they regularly worked shifts exceeding ten (10) hours.

37.    From May 2015 until September 2015:

    a.  From May 2015 until September 2015, Plaintiff SANCHEZ worked as a non-executive chef at Serafina Harlem for approximately eight (8) hours per day, six (6) days per week, for a total of forty-eight (48) hours per day.

b.  From May 2015 until September 2015, Plaintiff SANCHEZ was compensated at a fixed weekly salary of $1,200.00 per week in check form.

c.  From May 2015 until September 2015, the end Plaintiff SANCHEZ's employment, he was paid a fixed weekly salary, regardless of how many hours he worked each workweek. There was never any agreement that Plaintiff SANCHEZ's fixed weekly salary was intended to cover any overtime hours worked by him. Other non-executive chefs were similarly paid on an fixed salary basis and were not compensated for their overtime premium of time and a half for all hours worked over forty (40), even though there was never any agreement that their fixed weekly salaries would cover overtime.

38.    During his employment by Defendants, Plaintiff SANCHEZ never received a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

39.    Throughout his employment by Defendants, Plaintiff SANCHEZ never received any proper wage statements. The wage statements that Plaintiff SANCHEZ received from Defendants did not accurately state Plaintiff SANCHEZ's weekly hours or hourly rate of compensation. Similarly, Class members never received proper wage statements.

### Plaintiff CARLOS PALAGUACHI

40.    In or around August 2015, Plaintiff CARLOS PALAGUACHI, was hired by Defendants to work as a cook at Defendants' restaurant, Serafina Harlem, located at 1260 Amsterdam Ave., New York, NY 10027. Plaintiff PLAGUACHI's employment was terminated on January 4, 2016.

41.     During his employment by Defendants, Plaintiff PALAGUACHI worked the following schedules:

   a.   From August 2015 until December 2015, Plaintiff PALAGUACHI worked from 9:00 a.m. to 5:00 p.m. four (4) days per week and from 9:00 a.m. to 11:00 p.m. two (2) days per week, for a total of approximately sixty (60) hours each workweek.

   b.   From December 2015 until on or about January 4, 2016, Plaintiff PALAGUACHI worked from 8:00 a.m. to 5:00 p.m. four (4) days per week and from 8:00 a.m. to 11:00 p.m. two (2) days per week, for a total of approximately sixty-six (66) hours each workweek.

42.     Throughout his employment, Plaintiff PALAGUACHI he was paid at a straight time base hourly rate of $13.00 per hour and an overtime hourly rate of $19.50 per hour. Defendants always provided Plaintiff PALAGUACHI his compensation in check form.

43.     Even though Plaintiff PALAGUACHI worked at sixty (60) hours or more each week during his employment by Defendants, he was compensated for working only fifty-three (53) hours each workweek, due to Defendants policy of time-shaving.  Similarly, due to time-shaving, other FLSA Collective Plaintiffs and Class Members were compensated for fewer overtime hours than they actually worked each workweek.

44.     From September 2015 to January 4, 2016, Plaintiff PALAGUACHI never received any spread of hours premium payments, even though he worked shifts exceeding ten (10) hours throughout this period. Similarly, Class Members never received any spread of hours premium, even though they regularly worked shifts exceeding ten (10) hours.

45.    While employed by Defendants, Plaintiff PALAGUACHI never received a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

46.    While employed by Defendants, Plaintiff PALAGUACHI never received any proper wage statements. The wage statements that Plaintiff PALAGUACHI received from Defendants did not accurately state Plaintiff PALAGUACHI's weekly hours or hourly rate of compensation. Similarly, Class members never received proper wage statements.

*          *          *

47.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class members were required to work in excess of forty (40) hours each workweek.

48.    Defendants unlawfully paid Plaintiffs GUAMAN, SANCHEZ, and other FLSA Collective Plaintiffs and Class Members at fixed salary weekly rates that did not cover the overtime hours that they worked, resulting in unpaid overtime premium. There was never any agreement that the fixed weekly salaries that Plaintiffs GUAMAN, SANCHEZ, and other FLSA Collective Plaintiffs and Class Members received covered any overtime hours.

49.    Defendants unlawfully failed to pay Plaintiffs SANCHEZ and PALAGUACHI, and other FLSA Collective Plaintiffs, and Class Members for all hours worked each workweek, due to a policy of time-shaving, resulting in unpaid wages and overtime premium.

50.    Plaintiffs and Class members were required to work shifts exceeding ten (10) hours in duration.

51.    Defendants unlawfully failed to pay Plaintiffs and Class members spread of hours premium payments, even though Plaintiffs and Class Members regularly worked shifts exceeding ten (10) hours in duration.

52.    Defendants did not provide Plaintiffs or Class members with proper wage notices, as required by the New York Wage Theft Prevention Act. In fact, Plaintiff and Class members never received any wage notices.

53.    Defendants did not provide Plaintiffs or Class members with proper wage statements, as required by the New York Wage Theft Prevention Act. The wage statements provided to Plaintiffs and Class members did not include the accurate hours worked or hourly and overtime compensation.

54.    . Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF

### PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

55.    Plaintiffs reallege and reaver Paragraphs 1 through 54 of this class and collective action Complaint as if fully set forth herein.

56.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

57.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

58.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

59.    At all relevant times, the Defendants also engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek.

60.    At all relevant times, Defendants also engaged in a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all regular and overtime hours worked due to time-shaving.

61.    Defendants failed to pay Plaintiff and FLSA Collective Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

62.    Records, if any, concerning the number of hours worked b Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

63.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

64.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

65.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid regular and overtime wages, plus an equal amount as liquidated damages.

66.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

<div align="center"><strong>COUNT II</strong></div>

<div align="center"><strong><u>VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS</u></strong></div>

67.     Plaintiffs reallege and reaver Paragraphs 1 through 66 of this class and collective action Complaint as if fully set forth herein.

68.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

69.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

70.     Defendants willfully violated Plaintiffs GUAMAN, SANCHEZ, and Class members' rights by paying them on a fixed salary basis when Plaintiff and Class members were non-exempt employees who should have been paid an hourly rate.

71.     Defendants willfully violated Plaintiffs' SANCHEZ, PALAGUACHI and Class members' rights by failing to pay them for all hours worked due to a policy of time-shaving.

72.     Defendants failed to properly notify Plaintiff and Class members of their hourly pay rate and overtime rate, in direct violation of the New York Wage Theft Prevention Act.

73.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay

the spread of hours premium required by state law.

74.    Defendants failed to provide a proper wage and hour notice, at the date of hiring, or thereafter upon changes in the information in the notice, to all Class Members as required under the New York Wage Theft Prevention Act.

75.    Defendants failed to provide periodic wage statements to all Class Members as required under the New York Wage Theft Prevention Act.

76.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime,  unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.    An award of unpaid spread of hours premium due under the New York Labor Law;

e.      An award of unpaid compensation due to a policy of time-shaving;

f.      An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

h.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and spread of hours premium pursuant to the New York Labor Law;

i.      An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.      Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k.      Designation of this action as a class action pursuant to F.R.C.P. 23;

l.      Designation of Plaintiffs as Representatives of Class; and

m.      Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury on all issues so triable as of right by jury.

Dated: March 3, 2017

<div style="margin-left:40%">

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*


By:   */s/ C.K. Lee*
      C.K. Lee, Esq. (CL 4086)

</div>